UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SCHWEND, INC.,

        Plaintiff,

v.                              CASE No. 8:05-CV-458-T-24TGW

CHRISTOPHER C. COOK and
K&K SALES, INC.,

        Defendants.

_____

## REPORT AND RECOMMENDATION

In this case, the plaintiff, Schwend, Inc., seeks to prevent a former employee, defendant Christopher C. Cook, from soliciting its customers and from disclosing purportedly confidential and proprietary information he obtained while employed as a truck dispatcher for Schwend. To that end, the plaintiff has moved for a preliminary injunction, and that motion was referred to me for a report and recommendation. Based upon the parties' oral arguments and their submissions on this matter, I recommend that a preliminary injunction be issued, although one that is narrower than the injunction initially proposed by the plaintiff.

I.

The plaintiff, Schwend, Inc., is a Florida corporation that has been in the business of short- and long-distance hauling of dry bulk goods since 1976 (Doc. 4, Ex. A, ¶4).  Schwend has invested substantial time and expense in developing relationships with its customers (id. at ¶11).

Defendant Cook worked for the plaintiff from August 3, 2001, until April 19, 2004 (id. at ¶¶ 6, 13).  He was hired as a truck dispatcher, and his duties included coordinating the pick-up and delivery of loads by Schwend's drivers and making sales calls to potential customers to offer Schwend's transportation services.  Cook had no prior experience as a dispatcher in Schwend's line of business (id. at ¶9; Doc. 15, Ex. G-1). As a truck dispatcher, Cook had access to Schwend's pricing and  customer lists, and frequent contact with Schwend's customers (Doc. 4, Ex. A, ¶¶ 10-12).

On the day Cook was hired, he executed a "COVENANT NOT TO COMPETE AND CONFIDENTIALITY AGREEMENT" (Doc. 15, Ex. A)(employment agreement).  That agreement provides, among other things:

> 3.  Confidential Business Information-Prohibited Acts; Continuing Obligation; Propriet[a]ry Interest
>
> The Employee understands and agrees that all ... confidential business information is to be preserved

and protected; is not to be disclosed or made available ... to third persons for the purposes, or use unrelated to the business objects of the Company.... [I]n the event of termination of the Employee's employment, for any reason, such confidential business information shall remain the sole property of the Company....

. . .

7.  Restrictive Covenant-Restrictions

The Employee here expressly covenants and agrees ... that should he leave the employment of the Company, he will not, during the term of this employment agreement, and for the period of three years immediately following termination of such employment....

a.   Call upon any ... customers of the Company, solicited or served by the Company, or solicited or contracted [sic] by the Employee ... or any prospective customer whose name was secured from the files of the prospective list of the Company....

b.   Divert, solicit, or take away any such customer or customers of the Company, or the business or patronage of any such customer of the Company, for the purpose of competing with the Company in any form or fashion.

c.   Engage in the business of long distance hauling, short distance hauling, or dispatching for any Company in the areas aforementioned in direct competition with the Company.

The agreement lists 36 states in which Cook is precluded from engaging in these activities, including Florida and Georgia (id. at ¶6).

On approximately April 16, 2004, Cook tendered his resignation (Doc. 4, Ex. A, ¶13).  In his resignation letter, Cook implicitly acknowledged his obligations under the employment agreement, assuring Schwend "that sensitive things that I have been privy to will stay locked away in my head" (Doc. 15, Ex. G-2).  Cook's last day of employment with Schwend was April 19, 2004.

Despite his obligations under the employment agreement, Cook subsequently began contacting customers with whom he had worked when he was employed by Schwend.  Thus, on approximately April 28, 2004, Schwend obtained an e-mail authored by Cook that was sent to Schwend customers (Doc. 4, Ex. A, ¶14).  It stated (id. at Ex. 2 to Ex. A):

> To whom it may concern:
>
> I am sending this to everyone that I have done loads with in the past.  This e-mail to inform [sic] them that [I] am no longer with Schwend Inc.  My new e-mail address is ccglock27@tampabay.rr.com.  My new # is 229-221-1048, if you need anything you can give me a call, I will be moving freight on hoppers and dumps [.  I] will have freight out of FL, GA, AL, MS, LA, TX, AR, SC, NC, TN, KY, OH, PA, IL, IN and in many other places.  I can be

> reached at this # 24/7.  I am currently living in
> Dade City FL but will be moving to Thomasville
> GA around the first week of May and will be
> setting up A [sic] ofice [sic] their [sic] and I will e-
> mail my 800# to everyone when it is set up along
> with my new mailing address also. [I] hope to still
> do bussiness [sic] with everyone.
>
> Thanks, Chris C. Cook

Thereafter, Cook went to work with K&K Sales, Inc., in Thomasville, Georgia, which is a direct competitor of the plaintiff (id. at Ex. A, ¶18).  In addition to learning of Cook's e-mail, the plaintiff states that it has been contacted by several of its customers, including Purina, Royster Clark, Southern States, Diamond "R," All Pro Transport, Mercedes Trucking and Chemical Lime.  The customers said that they have been solicited by Cook and some of them indicated that they have done business with K&K Sales as a result (id. at ¶15; Doc. 15, Exs. D, E, F).  Therefore, the plaintiff claims that it has lost thousands of dollars in sales weekly (Doc. 4, Ex. A,  ¶17).  The plaintiff alleges further that, due to Cook's solicitations, "Schwend's relationship with its customers and Schwend's goodwill have been irreparably harmed" (id.).

Consequently, Schwend brought an action against Cook and K&K Sales in Georgia state court on June 4, 2004, seeking to preclude the

defendants from further violations of the employment agreement.   A temporary restraining order was initially granted.   However, following a hearing, the court denied injunctive relief, concluding that, under Georgia law, the employment agreement "was not sufficiently limited as to time, geographical area, job function or prohibited contacts" (Doc. 15, Ex. G-20). The plaintiff then voluntarily dismissed the state action.

Subsequently, the plaintiff filed its complaint in this court in March 2005, on the basis of diversity jurisdiction (Doc. 1).   The plaintiff alleges breach of contract, tortious interference with business relations, and misappropriation of trade secrets (id.).   These claims are based upon the plaintiff's contention that Cook used confidential customer lists and rate sheets to compete with Schwend to the benefit of his new employer, defendant K&K Sales.

The complaint was accompanied by a motion for a preliminary injunction (Doc. 4).   Schwend requests that Cook be enjoined from calling upon, soliciting, or diverting any Schwend customer that was serviced or solicited by Schwend before or during Cook's tenure.   It also asks that Cook be enjoined from engaging in the business of short- and long-distance hauling or dispatching for any company in direct competition with Schwend in the

areas listed in the confidentiality agreement.   Finally, it requests that defendant K&K Sales be enjoined from using Schwend's proprietary and confidential information that was provided by Cook.

As indicated, the motion for preliminary injunction was referred to me for a report and recommendation (Doc. 5).  Oral argument was heard on the plaintiff's motion (Doc. 18).  Additionally, the parties submitted affidavits and exhibits in support of their respective positions (Docs. 11, 12, 15-17).

## II.

A preliminary injunction may be issued when necessary "to protect the plaintiff from irreparable injury and to preserve the district court's power to render a meaningful decision after a trial on the merits."  Canal Authority of State of Florida v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974). The remedy, however, is considered extraordinary and drastic.  It may be granted only if the plaintiff demonstrates (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) that its threatened injury outweighs the threatened harm the injunction may cause the opposing parties; and (4) that granting the injunction will not disserve the public interest.  Haitian Refugee Center, Inc. v. Baker, 949 F.2d 1109, 1110 (11th Cir. 1991), cert.

denied, 502 U.S. 1122 (1992).  The motion should ordinarily be denied if the

plaintiff fails to meet its burden as to even one of the foregoing prerequisites.

United States v. Jefferson County, 720 F.2d 1511, 1519 n.21 (11th Cir. 1983).

III.

The plaintiff predicates its claim for injunctive relief upon

alleged violations of the non-competition and confidentiality provisions of the

employment agreement.  The choice of law appears dispositive of this dispute.

The agreement does not indicate which state law governs its validity and

enforcement.   If Georgia law controls, as the defendants contend, the

restrictive provisions would seemingly be declared void because their broad

scope violates Georgia public policy, as the Georgia state court judge

indicated (see Doc. 15; Ex. G-20, Doc. 16).  Georgia law assertedly does not

authorize the practice of "blue-penciling" modifications of the overbroad

provisions.   If, on the other hand, Florida law applies, as the plaintiff

contends, any overbroad provisions would not be declared invalid, but rather

could be modified so that the restraints are reasonable under the

circumstances.  See §542.335(1)(c), Fla. Stat.

Since this is a diversity action, the substantive law of the forum

state, including its conflict of law rules, is to be applied.  Shapiro v. Associ-

ated Intern. Ins. Co., 899 F.2d 1116, 1118 (11ᵗʰ Cir. 1990).  Traditionally, when confronted with questions regarding the enforcement of a contract, Florida courts have applied the doctrine of *lex loci contractus*, which directs that the law of the state where the contract was made governs.  Id. at 1119. Accordingly, the plaintiff argues that, under the traditional choice of law rule in Florida, the substantive law of Florida applies in this case because the contract was executed in Florida (Doc. 4, p. 6, n.1).

The defendants argue that Georgia law is applicable under a purported exception to the application of *lex loci contractus* when application of local law would violate the public policy of the state in which the agreement would be enforced (Doc. 12, pp. 4-7).  In this connection, the defendants cited to Sturiano v. Brooks, 523 So.2d 1126 (Fla. 1988) and Rollins, Inc. v. Parker, 755 So.2d 839 (Fla. App. 2000).

However, neither of these cases stands for the proposition argued by the defendants.  Thus, Sturiano is the Florida Supreme Court case that simply states the general rule that *lex loci contractus* continues to govern the choice of law decision for contract disputes.  Sturiano v. Brooks, supra, 523 So.2d at 1129-30.  Furthermore, Rollins is inapposite because the

contracting parties in that case agreed upon the state law that governed their dispute.  Rollins, Inc. v. Parker, supra, 755 So.2d at 841.

Moreover, to the extent a public policy exception is mentioned in Rollins, the defendants have misapprehended its meaning.  Thus, the Rollins case states that there is an exception to enforcing the parties' choice of governing law when it is "against the public policy of the forum state."  Id.  Florida, of course, is the forum state in this case.  Thus, this exception applies when there is a contract provision that is repugnant to the public policy of Florida.  See also Barnier v. Rainey, 890 So.2d 357, 359 (Fla. App. 2004); Roach v. State Farm Mutual Auto Ins. Co., 892 So.2d 1107, 1110 (Fla. App. 2004).

Therefore, the defendants have failed to show that Florida recognizes an exception to the application of *lex loci contractus* on the ground that application of Florida law would be contrary to Georgia public policy.  Accordingly, Florida law should be applied to determine the validity and enforcement of the agreement.[1]

---

[1]The defendants also dispute the court's subject matter jurisdiction, arguing that the plaintiff's claim does not meet the minimum amount in controversy of $75,000 for diversity jurisdiction (Doc. 12, pp. 1-2).  However, the case cannot be dismissed for want of subject matter jurisdiction unless it appears to a "legal certainty" that the plaintiff's claim is for less than $75,000.  St. Paul Mercury Indem. Co.  v. Red Cab Co., 303 U.S. 283,

IV.

A.  <u>Likelihood of success on the merits</u>.

The pertinent Florida statute, enacted in 1996, provides that a "person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant." §542.335(1)(b), <u>Fla</u>. <u>Stat</u>.  The statute sets out a non-exclusive list of legitimate business interests.  <u>Id</u>.  In this case, the plaintiff relies upon the following listed legitimate business interests (<u>see</u> <u>id</u>.):

1.  Trade secrets, as defined in s. 688.002(4).

2.  Valuable confidential business or professional information that otherwise does not qualify as trade secrets.

3.  Substantial relationships with specific prospective or existing customers, patients, or clients.

4.  Customer ... goodwill associated with ... [a] specific geographic location ... or [a] specific marketing area.

The law provides further that "[a] person seeking enforcement of a restrictive covenant also shall plead and prove that the contractually

---

289 (1938).  The plaintiff has presented an affidavit alleging a loss of approximately $200,000 (Doc. 4, Ex. A, ¶17).  Furthermore, even if this figure is overstated, as the defendants suggest, it does not appear to a legal certainty that the plaintiff's loss is less than $75,000.

specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction." §542.335(1)( c), <u>Fla</u>. <u>Stat</u>. If such a showing is made, the opposing party may establish that the restraint is overbroad, overlong, or otherwise not reasonably necessary, in which event the court is to modify the restraint and grant only the relief reasonably necessary to protect the business interest. <u>Id</u>.

The plaintiff, as indicated, asserts that it has a legitimate business interest in protecting information that it claims is either confidential or a trade secret. In this respect the plaintiff identifies its customer lists, driver lists, and rate sheets (Doc. 4, p. 6).

At first glance, this information would seem to be the type of information that is generally considered confidential. Thus, the plaintiff alleges that this information has economic value, that it is not readily ascertainable by the general public, and that it maintains this information in a password-protected computer system accessible only by its employees. Furthermore, by executing the employment agreement Cook acknowledged that company information is "a valuable, special, and unique asset"(Doc. 15, Ex. A, ¶2). Cook, moreover, in his resignation letter seemingly acknowl-

edged the confidentiality of this information, stating that "sensitive things that I have been privy to will stay locked away in my head" (id. at Ex. G-2).

The defendants, however, dispute the plaintiff's characterization of this information as trade secret or even confidential, arguing that a customer list can be compiled from a website on the internet and that the shipping rates are set by the customer, not the shipper (Doc. 12, p. 4; Doc. 16, pp. 48, 60). Moreover, since more than one year has passed, purportedly confidential price information possessed by Cook arguably may have become stale.

These matters were not meaningfully addressed during the hearing. Consequently, it is unclear at this point whether the customer lists and rate sheets are protected business interests under §542.335(1)(b), Fla. Stat. In any event, it is not necessary to make this determination at this point because the plaintiff has shown that customer relationships and goodwill are legitimate business interests that deserve protection.

As indicated, the non-competition provision of the employment agreement provides, in essence, that Cook shall not solicit Schwend's customers, divert Schwend's business to a competing company, or compete with Schwend in the designated states for a period of three years following the termination of his employment (Doc. 15, Ex. A). There is strong evidence

that Cook breached this agreement.  Thus, approximately two weeks after Cook submitted his resignation, he sent an e-mail "to everyone that I have done loads with in the past," informing them that he was no longer working for the plaintiff, but that he "will be moving freight on hoppers and dumps" in numerous states and that he "hope[s] to still do bussiness [sic] with everyone" (Doc. 4, Ex. 2 to Ex. A).  The plaintiff forcefully argues that Cook's e-mail is the proverbial "smoking gun" showing that Cook solicited Schwend customers to do business with his new employer, based on goodwill he developed during his tenure with Schwend.  Cook does not deny sending this e-mail and admits contacting several companies that are Schwend customers after he left Schwend's employ (Doc. 15, Exs. G-10, G-11, ¶¶ 13-18).

After sending this e-mail, Cook began employment in Thomasville, Georgia, with K&K Sales, a company that engages in the same line of business as Schwend.  The plaintiff has submitted several affidavits that provide further evidentiary support for its contention that Cook has improperly tried to direct business from the plaintiff to K&K Sales.  See Doc. 15, Ex. C (Howard Fertilizer company, which regularly does business with the plaintiff, was contacted by Cook on behalf of K&K Sales to

solicit his company for trucking services); id. at Exs. D, E, F (employees of the plaintiff who have been told by customers that Cook has called to solicit their business).

Moreover, there is evidence that Cook's conduct has benefitted K&K Sales to Schwend's detriment.  In this connection, the plaintiff produced a chart showing transportation services K&K Sales provided to various companies in 2004 (Doc. 15, Ex. 6).  With regard to one of the plaintiff's customers, Chemical Lime company, the chart shows that K&K Sales did not transport any goods for it during the first quarter of 2004, but that Chemical Lime became K&K Sales's second biggest customer for that year after Cook began working there.[2]

The defendants argue that they are not taking the plaintiff's customers because the plaintiff has no contracts with these companies and, in fact, K&K Sales has previously done business with several of them (see Doc.

---

[2]At the hearing, defense counsel attempted to refute any connection between Cook and K&K Sales's increased business with Chemical Lime by reference to the testimony of Howard Kennedy, the now deceased former owner of K&K Sales, who stated during a hearing on this matter in Georgia state court that it was Chemical Lime who contacted K&K Sales to transport its goods (Doc. 16, p. 45).  However, Kennedy's testimony is not dispositive on this point.  Thus, Kennedy initially stated that K&K Sales's business could be related to the hiring of Chris Cook (id.).  Furthermore, Kennedy's testimony that Chemical Lime called K&K Sales does not mean that its business with Chemical Lime was not precipitated by Cook's earlier communication with Chemical Lime.

12, pp. 3-4; Doc. 16,  pp. 42-44).   However, "[t]he focus of preliminary injunctive relief is on maintaining long standing relationships and preserving the goodwill of a company built up over the course of years of doing business.  Whether a company has a contract or not with its customers has no bearing on whether the company has been or will be damaged by solicitation of its customers."  <u>North American Products Corp.</u> v. <u>Moore</u>, 196 F. Supp.2d 1217, 1230-31 (M.D. Fla. 2002).   Furthermore, simply because K&K Sales previously hauled goods for some of these companies does not absolve the defendants if K&K Sales is receiving a greater proportion of business, at the plaintiff's expense, based on contacts Cook developed during his tenure at Schwend.  <u>See</u> <u>id</u>. at 1230.  In this connection, the plaintiff succinctly stated that (Doc. 4, p. 8):

> Schwend has invested substantial time and expense in developing its relationships with its customers over the 29 years it has been in business. Schwend's dispatchers, by virtue of the nature of their jobs, have significant and regular contact with Schwend's customers, drivers and subcarriers. Yet the customer relationships and associated goodwill belong to Schwend, not the dispatcher. Were a dispatcher permitted to leave his or her employment and begin to immediately compete with Schwend for Schwend's customers based upon the knowledge of Schwend's pricing and business practices and with full use of the relationships the dispatcher

developed while employed by Schwend, the result
would be a significant injury to Schwend's ability
to maintain its valuable customer relationships.

Therefore, the plaintiff has established, at a minimum, that protecting its customer relationships and goodwill are legitimate business interests that entitle it to seek enforcement of its employment agreement with Cook. Consequently, the plaintiff has shown a substantial likelihood that it will prevail on its claim alleging actionable violations of the non-competition provision of the employment agreement.

B. <u>Irreparable injury</u>.

The plaintiff has clearly made a showing of a substantial threat of irreparable injury arising from violations of the non-competition provision of the employment agreement. Under the governing Florida statute, "[t]he violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." §542.335(j), <u>Fla</u>. <u>Stat</u>. In light of the evidence demonstrating that the plaintiff has lost business as a result of Cook's solicitation of its customers, the defendants cannot rebut that presumption.

There is also substantial evidence that Cook has been taking advantage of Schwend's goodwill in soliciting customers for K&K Sales.

Of course, the harm caused to the plaintiff's goodwill is intangible, and potentially irreparable.

Furthermore, as the plaintiff points out, absent an injunction, Cook's conduct could continue to injure Schwend's business substantially in a manner that cannot be quantified.  See North American Products Corp. v. Moore, supra, 196 F. Supp.2d at 1230-31.  Therefore, these threats to the plaintiff's business support injunctive relief.

C. Balance of harms.

The defendants would be harmed if they were required to comply with all of the provisions of the employment agreement, as it appears overbroad in certain respects and too long in time.  Importantly, under the Florida statute, a restrictive covenant is to be enforced only to the extent that enforcement is reasonably necessary to protect legitimate business interests. §542.335(1)( c),  Fla. Stat.  Consequently, the harm to the defendants can be ameliorated by a measured preliminary injunction.

D. The public interest.

The final factor to be considered in determining whether to grant a preliminary injunction is generally stated as whether the injunction would disserve the public interest.  There is no reason to think that would be so in

this case.  Accordingly, this factor does not preclude preliminary injunctive relief.

## V.

In light of these circumstances, the plaintiff has clearly established that it is entitled to a preliminary injunction prohibiting the defendants from interfering with its customer relationships and goodwill.  What is not as clear is the scope of the conduct that should be enjoined.

As indicated, the employment agreement is unquestionably overbroad in several aspects.  Florida law does not invalidate such an agreement but does require the court to narrow the agreement to make the restraints reasonable.

During the hearing on this matter, the parties seemed to indicate an ability to fashion a preliminary injunction that would satisfy the interests of both sides.  The plaintiff, for example, indicated a willingness to narrow the territorial restriction of thirty-six states to just five: Florida, Alabama, Tennessee, Ohio and Texas.  Furthermore, the plaintiff said that it would provide a list of specific customers in those five states that Cook would be prohibited from soliciting.  The plaintiff, in addition, indicated that it seeks the injunction to preclude Cook from calling upon or soliciting any customers of Schwend

identified by the customer list for the purposes of engaging in direct competition with Schwend in the business of long-distance hauling, short-distance hauling, or dispatching bulk dry goods.  The defendant responded that, since Cook is now performing different duties at K&K Sales and is no longer working as a dispatcher, such a limited restriction might be acceptable.

It is appropriate to add that, unless the parties otherwise agree, the injunction should be limited to one year, subject to being extended upon a showing that circumstances warrant such an extension.  The employment agreement seeks to enforce its restrictions for three years.  Generally, under Florida law, a time restraint of more than two years is unreasonable. §542.335(1)(d), <u>Fla</u>. <u>Stat</u>.  While a longer term is recognized for trade secrets, §542.335(1)(e), <u>Fla</u>. <u>Stat</u>., the plaintiff has not yet shown that its business information qualifies as trade secrets.  Here, an injunction for a period of one year would cover a period of slightly more than two years from the time of Cook's resignation.

At the hearing, the parties also discussed the matter of a bond, but that discussion was limited.  Notably, Rule 65(c), Fed.R.Civ.P., states that no preliminary injunction should issue without the giving of security by the

applicant sufficient to pay any costs and damages that may be incurred or suffered by any party to have been wrongfully enjoined.

In this connection, the plaintiff said that it is willing to post a bond equal to twice Cook's earnings. The amount of Cook's salary was not stated at the hearing, or in the parties' submissions. However, it seems that an annual salary of $50,000 for Cook would be a fair approximation. Accordingly, twice this amount is a bond of $100,000.[3] Frankly, this amount seems high, but it reflects the plaintiff's own suggestion. The defendants, understandably, have not argued that this is an insufficient bond.

## VI.

For the foregoing reasons, I recommend that the motion for a preliminary injunction (Doc. 4) be granted to the extent that the parties jointly propose a preliminary injunction reasonably enjoining the defendants from soliciting the plaintiff's customers in the five states previously mentioned. Furthermore, in accordance with Rule 65(c), Fed.R.Civ.P., it is recommended that the plaintiff post a bond of $100,000.

Respectfully submitted,

---

[3]Of course, if this figure is incorrect, the parties can inform the court and the bond modified accordingly.

DATED: JUNE 6, 2005

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).