UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SCHWEND, INC.,

      Plaintiff,

v.                                        Case No. 8:05-cv-458-T-24 TGW

CHRISTOPHER C. COOK and
K & K SALES, INC.,

      Defendants.
_____/

**ORDER**

This cause comes before the Court on Plaintiff's Motion for Summary Judgment. (Doc. No. 52). Defendants oppose this motion. (Doc. No. 56).

**I. Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. Id. at 325. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. See id. When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to

interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. Id. at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Samples on behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. See Augusta Iron & Steel Works v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988).

**II. Background**

Plaintiff Schwend, Inc. is in the business of long distance hauling, short distance hauling, and dispatching freight transportation for companies in many states, including Florida, Alabama, Tennessee, Ohio, and Texas. (Doc. No. 4: Schwend affidavit, ¶ 4). On August 3, 2001, Defendant Christopher Cook was hired by Plaintiff as a truck dispatcher. (Doc. No. 4: Schwend affidavit, ¶ 5). Plaintiff's truck dispatchers make sales calls on Plaintiff's customers and receive calls from Plaintiff's customers regarding the long or short distance hauling of goods and supplies to and from the customers' facilities. (Doc. No. 11: Bice affidavit, ¶ 3; Lewis affidavit, ¶ 3; Elliott affidavit, ¶ 3).

When he was hired by Plaintiff, Cook signed a document entitled, "Covenant Not to Compete and Confidentiality Agreement" ("the Agreement"). (Doc. No. 1, Ex. 1). The

Agreement provides that customer, client, and driver lists are confidential.  The Agreement also provides that Cook will not disclose or use any of Plaintiff's confidential business information without prior written authorization and that this obligation continues indefinitely and does not cease upon his termination of his employment with Plaintiff.

The Agreement also contains a restrictive covenant that provides that for a period of three years after Cook's employment with Plaintiff ends, Cook cannot: (1) call upon any customer of Plaintiff; (2) divert, solicit, or take away any customer or business of Plaintiff for the purpose of competing with Plaintiff in any form or fashion; and (3) engage in the business of long distance hauling, short distance hauling, or dispatching for any company in Florida, Alabama, Tennessee, Ohio, and Texas in direct competition with Plaintiff.

During Cook's employment with Plaintiff, Cook received access to Plaintiff's customer files, client lists, and driver lists.  (Doc. No. 4: Schwend affidavit, ¶ 10; Doc. No. 51: Cook depo, p. 25-26).  Due to his employment with Plaintiff, Cook established a good relationship with some of Plaintiff's customers, including Royster Clark, Southern States, and Chemical Lime. (Doc. No. 51: Cook depo, p. 21).

On April 16, 2004, Cook resigned from his employment with Plaintiff.  (Doc. No. 15-2). On April 28, 2004, Cook sent the following email to twenty-four trucking companies and four customers of Plaintiff (Doc. No. 51: Cook depo, p. 34-35):

> To whom it may concern:
>
> I am sending this to everyone that I have done loads with in the past. This email to inform [sic] them that [I] am no longer with Schwend Inc.  My new e-mail address is ccglock27@tampabay.rr.com.  My new # is 229-221-1048, if you need anything you can give me a call, I will be moving freight on hoppers and dumps[.] [I] will have freight out of FL, GA, AL, MS, LA, TX, AR, SC, NC, TN, KY, OH, PA, IL, IN and many other places. I can be reached at this # 24/7.  I am currently

3

>living in Dade City FL but will be moving to Thomasville GA around the first week of May and will be setting up [an] ofice [sic] their [sic] and I will e-mail my 800# to everyone when it is set up along with my new mailing address also. [I] hope to still do bussiness [sic] with everyone.
>
>Thanks, Chris C. Cook

(Doc. No. 51, Ex. B). When Cook sent this email, he was employed by Defendant K & K Sales, Inc. ("K& K"). (Doc. No. 51: Cook depo, p. 36).

After sending the email, K & K did business with some of the companies that received the email, although K & K did business with most of these companies before Cook began his employment with K & K. (Doc. No. 51: Cook depo, p. 37-38). Furthermore, while he was employed by K & K, Cook called on Royster Clark, despite knowing that it was in violation of the Agreement. (Doc. No. 51: Cook depo, p. 33). Additionally, Cook solicited business from Howard Fertilizer while he was employed by K & K, even though Howard Fertilizer had regularly done business with Plaintiff since August of 2001. (Doc. No. 4: Rose affidavit, ¶ 4, 5). Prior to April of 2004, Howard Fertilizer did not do business with K & K; however, since May of 2004, K & K has hauled loads for Howard Fertilizer. (Doc. No. 4: Rose affidavit, ¶ 6, 7). Cook also has admitted that he contacted the following companies after he terminated his employment with Plaintiff: Diamond "R," Southern States, Chemical Lime, Royster Clark, Purina, and All Pro Transport. (Doc. No. 15-3: Cook's Responses to Plaintiff's First Request to Admit, # 13 -18).

Plaintiff contends that while employed by K & K, Cook contacted and continues to contact the following customers of Plaintiff: Purina Royster Clark, Southern States, Diamond "R," All Pro Transport, Mercedes Trucking, Howard Fertilizer, Harrell Fertilizer, and Chemical Lime. However, Howard Kennedy, Jr. (the deceased former owner of K &K) testified on July 1,

2004 that: (1) K & K had been doing business with Purina for thirty years, and Cook's employment had no effect on K & K's business with Purina; (2) K & K had been doing business with Royster Clark since the early eighties, and Cook's employment had no effect on K & K's business with Royster Clark; (3) K & K had been doing business with Southern States for fifteen or twenty years, and Cook's employment had no effect on K & K's business with Southern States; (4) K & K had been doing business with Diamond "R" for ten or twelve years, and he did not think that Cook's employment had an effect on K & K's business with Diamond "R;" and (5) K & K had never done business with All Pro Transport or Mercedes Trucking. (Doc. No. 16-2, p. 38-39, 42-45). With regards to Chemical Lime, Mr. Kennedy was asked whether K & K's business with Chemical Lime was affected by the employment of Cook, and Mr. Kennedy responded, "I don't–it could be, but I'm not real sure that it is, because it was a call-in. They called us here recently to start back with them . . .." (Doc. Bo. 16-2, p. 45).

Plaintiff filed suit against Cook and K & K in this Court on March 10, 2005. In the complaint (Doc. No. 1), Plaintiff asserts six claims: (1) breach of confidentiality agreement by Cook; (2) breach of non-compete/non-solicitation agreement by Cook; (3) tortious interference with business relations by Cook; (4) tortious interference with business relations by K & K; (5) tortious interference with Cook's employment contract with Plaintiff by K & K; and (6) misappropriation of trade secrets by Cook and K & K.

Thereafter, Plaintiff filed a motion for preliminary injunction. The magistrate judge held a hearing on the motion and recommended that the motion be granted.[1] (Doc. No. 19). The

---

[1] In analyzing whether Plaintiff showed a likelihood of success on the merits, the magistrate judge noted in his Report and Recommendation that "simply because K & K Sales previously hauled goods for some of [the companies that had done business with Plaintiff]" . . .

5

Court adopted the magistrate judge's Report and Recommendation, and the Court directed the parties to submit a joint proposed preliminary injunction order. (Doc. No. 28). The parties submitted a stipulated injunction order, which the Court issued on July 19, 2005. (Doc. No. 31).

The injunction order provides that Plaintiff would serve on Defendants a list of all customers with whom Plaintiff did business in 2004 in the states of Florida, Alabama, Texas, Ohio, and Tennessee ("the Customer List"). The injunction order further provides the following:

> B.   During the course of this litigation, or for a period of one year from the date of this Order, whichever is shorter, defendant Christopher C. Cook is ENJOINED from, directly or indirectly for himself or on behalf of or in conjunction with any other person, company, partnership or corporation, calling upon or soliciting any customers of [Plaintiff] identified in the Customer List, for the purposes of soliciting business for any person or entity engaged in direct competition with [Plaintiff] in the business of long distance hauling, short distance hauling or dispatching bulk dry goods, in the states of Florida, Alabama, Tennessee, Ohio and Texas.
>
> C.   Defendant K&K is ENJOINED from directly or indirectly assisting Cook in violating any provision of this Court's Order.

(Doc. No. 31).

Cook was fired from K & K in October or November of 2005. (Doc. No. 51: Melissa Kennedy depo, p. 55-56, 59). Thus, K & K contends that it could not have assisted Cook in violating this Court's injunction order after Cook's employment with K & K was terminated.

### III.  Motion for Summary Judgment

Plaintiff seeks summary judgment on its claims that Cook breached the confidentiality agreement, that Cook breached the non-compete/non-solicitation agreement, that Cook and K & K tortiously interfered with Plaintiff's business, and that Cook and K & K misappropriated trade

---

does not absolve the defendants if K & K Sales is receiving a greater proportion of business, at the plaintiff's expense, based on contacts Cook developed during his tenure" with Plaintiff. (Doc. No. 19, p. 16).

secrets.  While Plaintiff has submitted some compelling evidence in support of its claims, there still exists genuine issues of material fact, including the extent of Cook and K & K's solicitation of Plaintiff's customers.[2]  For example, with regards to the email solicitation by Cook on April 16, 2004, it is unclear as to which customers of Plaintiff were solicited by the email and the extent to which the email solicitation was successful.  Additionally, Plaintiff relies on Supplemental Exhibit A (Doc. No. 51) to show the customers solicited by Cook and K &K;[3] however, that exhibit simply lists customers of Plaintiff–the exhibit in itself does not show that such customers were solicited by Cook or K & K.

Furthermore, while Plaintiff cites Melissa Kennedy's[4] deposition testimony in support of its contention that K & K violated this Court's injunction by contacting customers on the Customer List, there is a genuine issue of material fact regarding who at K & K contacted these customers, whether the contacts were in response to these customers first contacting K &K without solicitation, and to what extent this contact occurred while Cook was still employed with K & K.

**IV.  Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment (Doc. No. 52) is **DENIED**.

---

[2]The Court notes that Plaintiff submits several affidavits that contain hearsay statements regarding the contention that Plaintiff has received calls from its customers that Cook, on behalf of K & K, has made calls to solicit their business.  (Doc. No. 11: Bice affidavit, ¶ 5 and Lewis affidavit, ¶ 5; Doc. No. 4: Elliott affidavit, ¶ 5 and Schwend affidavit, ¶ 14, 15, 16, 18).  The Court cannot consider these hearsay statements as evidence.  However, the Court presumes that Plaintiff would like an opportunity to convert this evidence to an admissible form and present it at trial.

[3]Doc. No. 51, p. 6

[4]Melissa Kennedy is the current owner of K & K.

7

**DONE AND ORDERED** at Tampa, Florida, this 22nd day of March, 2006.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record